UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AUNHK RA AUNHKHOTEP,[1] | ) |
| Plaintiff, | ) |
| v. | ) No. 4:24-CV-01278 JSD |
| JOHN D. JORDAN, et al., | ) |
| Defendants. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on plaintiff Aunhk Ra Aunhkhotep's Application to Proceed in District Court Without Prepaying Fees or Costs. [ECF No. 2]. Having reviewed the Application and the financial information provided in support, the Court finds that plaintiff is unable to pay the costs of this litigation. The Court will therefore grant the Application and waive the filing fee in this matter. Additionally, for the reasons discussed below, the Court will dismiss all claims and defendants from this action pursuant to 28 U.S.C. § 1915(e)(2)(B).

**Legal Standard on Initial Review**

Federal law allows individuals who cannot afford court fees to file lawsuits without prepaying those fees, a status known as proceeding "in forma pauperis" or "IFP." *See* 28 U.S.C. § 1915(a). While this provision promotes access to the courts, it includes statutory safeguards that require the Court to evaluate a complaint before issuing service of process on defendants. Under this initial screening process, the Court must dismiss any complaint that (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2).

---

[1] Plaintiff is also known as (a/k/a) Jimmy Walker, as well as Khalifa Ahdnahd, in this Court.

The Court must liberally construe complaints filed by self-represented individuals under § 1915(e)(2). *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). If the essence of an allegation is discernible, the district court should interpret the complaint in a way that allows the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). Liberal construction, however, does not exempt self-represented plaintiffs from the fundamental requirement of pleading facts sufficient to state an actionable claim. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). The Court will not supply additional facts or construct legal theories to support the plaintiff's claims. *Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004).

To adequately state a claim for relief, a complaint must include sufficient factual detail to demonstrate that the claim is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" are insufficient. *Id.* at 678. A claim is plausible if it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

**The Complaint**

This case arises from plaintiff's visit, on April 19, 2024, to the Thomas F. Eagleton United States Courthouse, which houses the United States District Court for the Eastern District of Missouri. Plaintiff complains that on that date, prior to reaching the "check-in" station in the lobby at the Federal Courthouse, an unnamed person told him that he was on the U.S. Marshals Security Watch/Escort List. Plaintiff was informed that as a result, he had to be escorted while visiting the Federal Courthouse.

2

Plaintiff states that an unnamed person then told him that the Courthouse had received a flyer from St. Louis Metropolitan Police Department with plaintiff's name, photo and identifying information, indicating that plaintiff uses his personal cellphone illegally to record public officials while visiting public buildings.

Plaintiff objects to having his name placed on the Security Watch/Escort List at the Federal Courthouse. He brings eight counts for relief[2] in this action against two named defendants, John D. Jordan (United States Marshal) and Justin Barlow (Supervising United States Marshal). Plaintiff also brings claims against Unknown U.S. Marshal Deputies, Unknown U.S. Court Security Officers and United States Marshals Service.[3] Plaintiff brings this action against all of the defendants in their individual capacities, except for the U.S. Marshals Service, which is named in its official capacity only.

Plaintiff enumerates his causes of action as follows. In counts I and IV of the complaint, he brings claims against defendants John Jordan and Jason Barlow, respectively, for "Privacy Rights Violation[s]" under 5 U.S.C. § 552a(e)(5). In counts II and V of the complaint, he brings claims against defendants Jordan and Barlow, respectively, for "Failure to Maintain Accurate Records" in violation of 5 U.S.C. § 552a(g)(1)(C).

In counts III and VI of the complaint, plaintiff brings claims under *Bivens* against defendants Jordan and Barlow, respectively, for violations of his Fifth Amendment due process rights (both substantive and procedural). He asserts that defendants failed to establish a grievance procedure under which plaintiff could challenge being placed on the Security Watch/Escort List.

---

[2]Plaintiff misnumbers the Counts enumerated in his complaint. The Court will designate the Counts in the complaint numerically utilizing roman numerals.

[3]Plaintiff identifies the United States Marshals Service as the United States Marshals Office. The Court will instruct the Clerk to update the docket with the proper name.

Count VII of plaintiff's complaint is brought against "All Defendants, Known and Unknown," for "Retaliation for Exercising First Amendment Rights." He asserts that defendants placed him on the Security Watch/Escort List because he engaged in purported *illegal* photography when using his personal cellphone to record officials in public. (emphasis taken from plaintiff's complaint). Plaintiff believes that the allegation from St. Louis Metropolitan Police was that he acted illegally in photographing public officials was a violation of his First Amendment rights, and that placing him on the Security Watch/Escort List by someone at the Federal Courthouse was done in retaliation for exercising those rights. He has not, however, connected the two purported incidents, *i.e.,* the photography that allegedly occurred in St. Louis City and the alleged retaliation at the Federal Courthouse.

Count VIII of plaintiff's complaint alleges a claim against the United States Marshals Service for failing to respond to a Freedom of Information Act (FOIA) request in violation of 5 U.S.C. § 552.

Plaintiff seeks compensatory damages and injunctive relief in this action.

## Discussion

**A. Plaintiff's Allegations Against the John Doe Defendants Fails to State a Claim for Relief**

Plaintiff indicates that he is bringing claims against two fictitious or unknown entities in this action: Unknown U.S. Marshal Deputies and Unknown U.S. Court Security Officers. Plaintiff has not described these two groups of individuals/entities, nor has he specifically indicated how these individuals or entities allegedly violated his rights.

Generally, fictitious parties may not be named as defendants in a civil action. *Phelps v. United States*, 15 F.3d 735, 739 (8th Cir. 1994). An action may proceed against a party whose name is unknown, however, if the complaint makes sufficiently specific allegations to permit

4

identification of the party after reasonable discovery. *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985). In this case, plaintiff has failed to make specific allegations as to each John Doe defendant - Unknown U.S. Marshal Deputies and Unknown U.S. Court Security Officers - such that their identities could be ascertained after reasonable discovery. These John Doe defendants are both unidentified and indeterminate in number. This is impermissible. *See Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (suit naming "various other John Does to be named when identified" not permissible). As a result, the defendants identified as Unknown U.S. Marshal Deputies and Unknown U.S. Court Security Officers will be dismissed from this action.

    **B. Plaintiff's *Bivens* Claims and Damage Claims Against the U.S. Marshals Service Are Subject to Dismissal**

Plaintiff sues defendant U.S. Marshals John Jordan and Justin Barlow under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). His allegations appear to involve: (1) denial of his Fifth Amendment due process rights in failing to establish a grievance procedure that would allow him to appeal being placed on a Security Watch/Escort List and (2) retaliation for exercising his First Amendment rights.

In *Bivens*, the Supreme Court authorized a damages action against federal officials (in their individual capacities) for Fourth Amendment violations. Since it decided *Bivens*, however, the Supreme Court "has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity." *Ziglar v. Abbasi,* 582 U.S. 120, 134 (2017). Indeed, the Court has only recognized three contexts where a *Bivens* action was appropriate. After *Bivens* was originally decided, the second case it was applied was in a Fifth Amendment sex-discrimination case, *see Davis v. Passman*, 442 U.S. 228 (1979), and the third time it was applied was in an Eighth Amendment deliberate indifference case, *see Carlson v. Green*, 446 U.S. 14 (1980). *Bivens* is appropriately limited

5

because Congress is better positioned to create causes of action. *See Egbert v. Boule*, 142 S. Ct. 1793, 1802–03 (2022).

Even if the allegations against defendants Jordan and Barlow were true, such allegations fail to state a claim that these defendants did, or failed to do, anything that violated plaintiff's rights because plaintiff has failed to link either Jordan's or Barlow's actions to his alleged placement on the Security Watch/Escort List. Simply put, plaintiff fails to allege in his complaint exactly who in the Marshals Service decided he should be placed on the Security Watch/Escort List. Thus, he cannot link either Jordan or Barlow to a purported discriminatory due process violation or to what he perceives to be First Amendment retaliation.[4]

Additionally, this is not the type of case in which a *Bivens* action is able to apply. Courts apply a two-step framework to analyze whether *Bivens* applies. First, is this case "meaningfully different from the three cases in which the Court has implied a damages action"? *Egbert,* 142 S.Ct. at 1803. Second, if the claim arises in a new context, a *Bivens* remedy is unavailable if "special factors" counsel hesitation. *Id.* One such "special factor" is whether Congress has provided an alternative remedial structure. *Id.* at 1804. "[T]hat alone ... may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Ziglar*, 582 U.S. at 137.

Plaintiff seeks to expand *Bivens* to a new context. The Supreme Court has never recognized a *Bivens* claim in the instances plaintiff describes. *See, e.g., Pinson v. U.S. Dept. of Justice*, 514 F.Supp.3d 232 (D.C. Cir. 2021). Additionally, two "special factors" counsel against applying *Bivens* here. *Accord id.* at 142–43.

---

[4]Furthermore, there is no indication that there is a liberty or property interest in possessing the documents he states he seeks under the FOIA or the Privacy Act, as analyzed, *infra.* Thus, plaintiff is unable to state a denial of due process because of his failure to obtain said documents.

First, plaintiff has an "alternative remedy in the Privacy Act [and FOIA], which precludes his requested *Bivens* remedy." *Liff v. Off. of Inspector Gen. for U.S. Dep't of Labor*, 881 F.3d 912, 922 (D.C. Cir. 2018). Plaintiff, as he has done in this very suit, may seek records relating to why he was placed on the Security Watch/Escort List under these other federal laws. Even if the Privacy Act and FOIA do not "provide a complete remedy for the injury," their existence as a "comprehensive scheme ... stops [this Court] from providing additional remedies under *Bivens*." *Wilson v. Libby*, 535 F.3d 697, 707 (D.C. Cir. 2008); *see also Storms v. Shinseki*, 319 F. Supp. 3d 348, 358 (D.D.C. 2018), *aff'd,* 777 F. App'x 522 (D.C. Cir. 2019) (per curiam).

Second, "national security" counsels against expanding *Bivens* to a new context. *See Ziglar*, 582 U.S. at 142. This is so because "[t]he risk of personal damages liability is more likely to cause an official to second-guess difficult but necessary decisions concerning national security policy." *Id.* Because plaintiff's *Bivens* claim in part turns on the United States Marshals Service's decision to place plaintiff on a Security Watch/Escort List, *Bivens* is not appropriate. *Accord id.* at 143–44.[5]

And a *Bivens* claim does not lie against a private entity, such as the one that employs the Court Security Officers. *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) (no *Bivens* action available against private entity acting under color of federal law); *Holland v. Pinkerton*

---

[5]Section 1315(b)(1) of Title 40 of the United States Code charges the Department of Homeland Security, of which Federal Protective Services are part, with "the protection of property owned or occupied by the Federal Government and persons on the property," and 28 U.S.C. § 566, gives the U.S. Marshals Service "final authority regarding security requirements for the judicial branch of the Federal Government. While this case may not present the identical "national security" implications to those at issue in *Egbert* involving the international border, "[t]here is no question the Federal Defendants have a strong interest in protecting federal property and persons on federal property[.]" *See Index Newspapers LLC v. United States Marshals Serv.,* 977 F.3d 817, 831 (9th Cir. 2020) (affirming Judge Simon's entry of a preliminary injunction prohibiting federal officers from, among other things, arresting or using physical force against a journalist or legal observer in connection with the summer 2020 protests). Congress empowered the defendants with the authority to protect federal property generally, 40 U.S.C. § 1315(b)(1), and "buildings housing the [federal] judiciary" specifically. 28 U.S.C. § 566(i).

*Security,* 68 F.Supp.2d 282, 284 (S.D.N.Y.1999) (dismissing claims that CSO unreasonably detained plaintiff). Any claims that plaintiff may be asserting against Court Security Officers under *Bivens* are therefore dismissed for failure to state a claim on which relief can be granted. *See* 28 U.S.C. § 1915(e) (2)(B)(ii).

Last, the Court notes that plaintiff is also attempting to sue the United States Marshals Service for damages based on the alleged violation of his due process rights and for First Amendment retaliation. But sovereign immunity shields the U.S. Marshals Service from suit because plaintiff has not alleged that the agency has waived sovereign immunity in this context. *See, e.g., FDIC v. Meyer,* 510 U.S. 471, 475 (1994).

### C. Even if Plaintiff's *Bivens* Claims Were Not Subject to Dismissal, the Privacy Act Claims Would Supersede the *Bivens* Claims

The Privacy Act "regulate[s] the collection, maintenance, use, and dissemination of information by [Federal] agencies." *Doe v. Chao*, 540 U.S. 614, 618 (2004). The Privacy Act requires that agencies "maintain ... only such information about an individual as is relevant and necessary" for agency purposes, 5 U.S.C. § 552a(e)(1), including "all records which are used by the agency in making any determination about any individual." *Id.* § 552a(e)(5).

Agencies also must "make reasonable efforts to assure that [records about an individual] are accurate, complete, timely, and relevant for agency purposes," before the agency "disseminat[es]" such records. *Id.* § 552a(e)(6). The Privacy Act provides a statutory right for a person to review the contents of government records about them and seek correction "of any portion thereof which the individual believes is not accurate, relevant, timely, or complete." *See id.* § 552a(d). An individual can sue in federal court if an agency denies their request to review records or fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the

8

qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual. *Id.* § 552a(g)(1).

The Privacy Act also offers relief for some claims based on the government's information that is not "within a system of records." *McCready v. Nicholson*, 465 F.3d 1, 11 (D.C. Cir. 2006) (quotation marks omitted). The Privacy Act also applies when an "adverse determination 'is made'" by the agency that maintained the flawed record or by an outside actor. *See Dickson v. Office of Pers. Mgmt.,* 828 F.2d 32, 36–37 (D.C. Cir. 1987). Injunctive relief and monetary damages are available. 5 U.S.C. § 552a(g)(2) & (4).

Several Circuit Courts of Appeals have recognized the Privacy Act as an alternative remedial scheme precluding *Bivens*. In *Wilson v. Libby*, for example, the District of Columbia Circuit Court of Appeals concluded that the Privacy Act constitutes a legislated remedy, blocking a *Bivens* action over the improper disclosure by government officers of the identity of CIA operative Valerie Plame, which hindered her career. *Wilson v. Libby*, 535 F.3d 697, 709 (D.C. Cir. 2008). *See also Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 274 (D.C. Cir. 2003) (affirming the dismissal of *Bivens* action based on leaks of private information by government officials because those claims were "encompassed within the remedial scheme of the Privacy Act").

Likewise, in *Abdelfattah v. U.S. Department of Homeland Security*, the District of Columbia Circuit Court of Appeals that the Privacy Act precluded a *Bivens* action challenging the collection and maintenance of intelligence information in a Department of Homeland Security database. 787 F.3d 524, 534 (D.C. Cir. 2015). While the *Abdelfattah* plaintiff could seek expungement as equitable relief for violations of the Constitution, as well as the Privacy Act, the

9

Court denied the availability of a *Bivens* damages claim arising from the same constitutional claims. *Id.* at 534–35.

The Sixth Circuit has similarly held that the Privacy Act's "meaningful remedy" for claims arising from government records precludes a *Bivens* remedy, *Downie v. City of Middleburg Heights*, 301 F.3d 688, 696 (6th Cir. 2002), and the Fourth Circuit has suggested the same. *See Chesser v. Chesser,* 600 Fed.Appx. 900, 901 (4th Cir. 2015) (citing *Wilson*, 535 F.3d 697, and *Downie,* 301 F.3d 688). Accordingly, this Court also finds that plaintiff's accompanying Privacy Act claims precludes any remedies sought against defendants under *Bivens.*

### D. Plaintiff's Claims Under the Privacy Act Are Subject to Dismissal for Failure to State a Claim

As applicable to the allegations in the instant complaint, the Privacy Act prohibits a federal agency from disclosing "any record ...contained in a system of records by any means of communication to any person" without the subject's permission, save certain exceptions. *Hurt v. D.C. Court Servs. & Offender Supervision Agency*, 827 F.Supp.2d 16, 20 (D.D.C. 2011) (quoting 5 U.S.C. § 552a(b). An individual who has suffered injury from an improper disclosure may recover monetary damages under 5 U.S.C. § 552a(g)(1)(D), if he can show that "'the agency acted in a manner which was intentional or willful[.]'" *Sussman v. U.S. Marshals Serv.,* 494 F.3d 1106, 1122 (D.C. Cir. 2007) (quoting 5 U.S.C. § 552a(g)(4)).

Courts have interpreted "§ 552a(g)(1)(D) to permit claims predicated on § 552a(b) violations only by a person whose records are actually disclosed." *Id.* at 1123. Further, the records must be "about" that person and "retrieved by his name." *Id.* (emphasis omitted).[6] Plaintiff asserts that Jordan and Barlow:

---

[6]To the extent plaintiff is attempting to bring an action against the Court Security Officers under the Privacy Act, his claim fails. The Privacy Act likewise does not permit a claim against an independent

10

>created, directed the creation of or approved the creation of an operational rule, policy or memorandum requiring selected individuals visiting the court building to be placed on the Marshals Security Watch/Escort List whom the agency designates a security threat or security risk. . .and approved the acceptance by the Marshals Office of St. Louis Metropolitan Police Department's Flier [sic] which contains the name, photo and other identifying information, including information accusing plaintiff of using personal cellphone to illegally record public officials.

Plaintiff claims that this alleged failure to maintain accurate records, required plaintiff to be "closely monitored and escorted" while visiting the courthouse.

Unfortunately, plaintiff fails to indicate what specific alleged records, *relating to him,* that were made by the Marshals Service, were requested by plaintiff but not disclosed by defendants Jordan and Barlow. He also fails to allege which of the records, *about him,* were improperly maintained by defendants. And he fails to indicate that he suffered some adverse determination because of that improper maintenance. *See Harry v. USPS,* 867 F. Supp. 1199, 1204 (M.D. Pa. 1994) (citing *Rose v. U.S.,* 925 F.2d 1257, 1259 (9th Cir. 1990)).

The Court is aware that plaintiff was upset that he was placed on a Security Watch/Escort List. However, he does not indicate that he was unable to go where he pleased in the Federal Courthouse, only that he had to have an escort (by Court Security Officers) while doing so. "The governmental interest in safeguarding courthouses is paramount," and thus, the public is subject to inspection and surveillance while in the Federal Courthouse. *Legal Aid Soc. v. Crosson*, 784 F.Supp. 1127, 1131 (S.D.N.Y.1992). As such, plaintiff has not stated a claim for a breach of the Privacy Act by defendants.

---

contractor that merely provides services to a federal agency. *Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 124 (2d Cir.2008).

11

### E. Plaintiff's FOIA Claim is Subject to Dismissal for Failure to State a Claim

Plaintiff asserts that he submitted an in person the FOIA request to defendant Justin Barlow in the Marshals Service on June 6, 2024.[7] He claims that Barlow failed to respond within a twenty-day timeframe. Plaintiff asserts that he then delivered an "appeal letter" on August 8, 2024, to Justin Barlow. Barlow then allegedly failed to respond to plaintiff's appeal. Plaintiff, however, fails to indicate what documents or material he sought in his FOIA request. And he has not attached a copy of the FOIA request to these proceedings.

To prevail in a FOIA case, the plaintiff must show that an agency has: (1) improperly (2) withheld (3) agency records.[8] *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989); *United We Stand Am., Inc. v. IRS*, 359 F.3d 595, 598 (D.C.Cir.2004). FOIA authorizes suit only against federal agencies and limits the remedy for the improper withholding of records to injunctive relief. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980); *see also* 5 U.S.C. § 552(a)(4)(B) & (f)(1). A district court may only order the agency to produce erroneously withheld records. *See, e.g., Kennecott Utah Copper Corp. v. U.S. Dep't of the Interior,* 88 F.3d 1191, 1203 (D.C.Cir.1996) (finding FOIA only calls for releasing records to a complainant, not publication in the Federal Register). Once all requested records have been produced, there is no longer a case or controversy and a FOIA action becomes moot. *See Armstrong v. Exec. Office of the President,* 97 F.3d 575, 582 (D.C.Cir.1996).

---

[7]Plaintiff sues the United States Marshals Service in Count VIII of his complaint under FOIA for failing to respond to his request.

[8]The Supreme Court has held that for documents to qualify as "agency records" the agency must both (1) "create or obtain" the requested materials, and (2) "be in control of [them] at the time the FOIA request is made." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144–45 (1989) (quoting *Forsham v. Harris*, 445 U.S. 169, 182 (1980)). Thus, to the extent plaintiff requested from the U.S. Marshals records relating to what was received about him from St. Louis Metropolitan Police Department, such records would not be responsive to his FOIA request. *See, e.g. Buholtz v. United States Marshals Service*, 233 F.Supp.3d 113 (D. D.C. 2017).

Although the FOIA and the Privacy Act both "evidence Congressional concern with open government, and especially[ ] accessibility to government records," the statutes "seek in different ways to respond to the potential excesses of government." *Greentree v. U.S. Customs Serv.*, 674 F.2d 74, 76–78 (D.C. Cir. 1982). Specifically, the two acts differ in their intended beneficiaries: the Privacy Act was "designed to provide individuals with more control over the gathering, dissemination, and accuracy of agency information about themselves," whereas the FOIA was "intended to increase the public's access to governmental information." *Id*. (emphasis added). Put broadly, "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted). The statute is concerned with transparency and provides a means by which citizens may "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted). The Privacy Act is, by contrast, largely preoccupied with "safeguard[ing] the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records." *Bartel v. Fed. Aviation Admin.*, 725 F.2d 1403, 1407 (D.C. Cir. 1984); *Blazy v. Tenet*, 194 F.3d 90, 96 (D.C. Cir. 1999) (noting that unlike the FOIA, the Privacy Act's primary purpose is not disclosure). In pursuit of this overarching goal, however, the Privacy Act does provide for certain forms of disclosure in order to allow an individual to "ensure[ ] that his records are accurate and properly used." *Id*. Individuals who wish to obtain such materials, but are "wrongly denied access to records pertaining to them[,] may bring a civil action to compel the agency to disclose the records." 5 U.S.C. § 552a(g)(1)(B) (creating cause of action for improper withholding); *id.*, § 552a(g)(3)(A)-(B) (outlining relief available in such an action). The Privacy Act, like the FOIA, thus provides

13

certain routes by which individuals may obtain the release of information stored by government agencies.

As noted above, plaintiff fails to indicate what specific agency records he sought from the United States Marshal Service. *See* 5 U.S.C. § 552(a)(3)(A). (noting that an agency's disclosure obligations under the FOIA are triggered by its receipt of a request that "reasonably describes [the requested] records" and "is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed"). Therefore, the Court cannot find that plaintiff has properly alleged a FOIA claim in this instance. Plaintiff's FOIA claim will be dismissed without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's claims against defendants are **DISMISSED** without prejudice. *See* 28 U.S.C. 1915(e)(2)(B). A separate Order of Dismissal will accompany this Opinion, Memorandum and Order.

**IT IS FURTHER ORDERED** that an appeal of this Order would not be taken in good faith.

Dated this 14th day of November, 2024.

                                        HENRY EDWARD AUTREY
                                        UNITED STATES DISTRICT JUDGE